UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| FIRST AMERICAN BANK, | Civil Action No. 17-3778 (MAS)(DEA) |
| Plaintiff/Counter Defendant, | |
| v. | **MEMORANDUM OPINION** |
| SJP GROUP, INC. EMPLOYEE STOCK OWNERSHIP TRUST, | |
| Defendant, | |
| R. ALEXANDER ACOSTA, Secretary of Labor, United States Department of Labor, | |
| Counterclaimant/Intervenor. | |

**SHIPP, District Judge**

This matter comes before the Court on: (1) Defendant SJP Group, Inc. Employee Stock Ownership Trust's ("Defendant" or "the Plan")[1] Motion to Dismiss or, in the alternative, for Summary Judgment (ECF No. 28); (2) Intervenor Department of Labor's ("Intervenor" or "DOL") Motion to Dismiss or, in the alternative, for Summary Judgment (ECF No. 29);[2] and (3) Plaintiff

---

[1] Defendant's moving brief collectively refers to the SJP ESOT and the SJP ESOP as "the Plan." (Def.'s Moving Br. 1, ECF No. 28-1.) Further, during the September 12, 2018 oral argument, counsel Peter LeVan on behalf of Defendant referred to Defendant collectively as "the Plan," which none of the parties disputed. (ECF No. 38.) The Court, accordingly, utilizes Defendant's collective terminology throughout this Memorandum Opinion. To the extent the ESOT or ESOP is distinct, the Court's analysis is not altered.

[2] Defendant and the DOL each submitted a statement of undisputed material facts pursuant to Local Civil Rule 56.1. Plaintiff responded and submitted its own counterstatement of material facts, to which Defendant and Intervenor responded. As the parties have had a reasonable

First American Bank's ("Plaintiff," "First American Bank," "First American," "FAB," or the "Bank") Cross-Motion to Dismiss Intervenor's Counterclaim (ECF No. 32). All motions were opposed (ECF Nos. 32, 35) and replied to (ECF Nos. 33, 34, 36). The Court has carefully considered the parties' submissions and heard oral argument on September 12, 2018. (ECF No. 38.) For the reasons set forth below, Defendant's and the DOL's Motions are GRANTED and FAB's Cross-motion to Dismiss Intervenor's Counterclaim is GRANTED without prejudice.

I. **Background**

Plaintiff initiated the instant lawsuit against Defendant on May 26, 2017. (Compl., ECF. No. 1.) The Complaint is factually related to a case filed by the Department of Labor on July 7, 2012, captioned *Solis v. First Bankers Trust Services, Inc., et al.*, No. 3:12-cv-4450 ("The DOL Case").

The relevant facts are almost entirely undisputed. By way of background, SJP Group, Inc. ("SJP") sponsored an employee stock ownership plan ("ESOP") and an affiliated trust ("ESOT") (collectively, the "Plan").[3] (Compl. ¶¶ 7-8.) First American Bank agreed to loan SJP, and other affiliated borrowers, $22,500,000. (Pl.'s Counter-Statement of Material Facts ("CSMF") ¶ 28, ECF No. 32-2.) SJP then loaned $16,000,000 of this amount to the ESOT through a Loan and Security Agreement ("SJP LSA") entered into between SJP and First Bankers Trust Services, Inc. ("First Bankers" or "FBT"), the then-trustee of the ESOT. (Def.'s Statement of Undisputed Material Facts ("SUMF") ¶ 2, ECF No. 28-4; Pl.'s Resp. to Def.'s SUMF ¶ 2, ECF No. 32-2; LeVan Decl. Ex. A ¶¶ 2.1(c).)

---

opportunity to present all materials relevant to a motion for summary judgment, the Court reviews and decides the motions as motions for summary judgment.

[3] *See supra* note 1.

The Plan used the $16,000,000 to purchase 380,000 shares of Series B Convertible Common Stock in SJP from Vincent DiPano, the majority shareholder of the company. (Pl.'s CSMF ¶ 29; Pl.'s Resp. to DOL's SUMF ¶ 11, ECF No. 32-2.)[4] The Plan executed a promissory note ("ESOP Note") in favor of SJP in the amount of $16,000,000. (Def.'s SUMF ¶ 3; Pl.'s Resp. to DOL's SUMF ¶ 12.)[5] Simultaneously, SJP and the Plan entered into a pledge agreement whereby the 380,000 purchased shares were pledged to SJP as collateral for the ESOP Note. (Def.'s SUMF ¶ 4.) Also at the same time, SJP entered a Collateral Assignment of the ESOT Loan Documents to FAB. (*Id.* ¶ 5.) First American perfected its security interest in the collateral by taking possession of the shares and filing financing statements with the Delaware Division of Corporations. (Carmody Decl. ¶ 5, Ex. A, ECF No. 32-3.) As portions of the shares were paid off, First American released shares.[6] First American is still in possession of other shares through the suspense account. (Carmody Decl. ¶ 14.) It is undisputed that First American Bank was never in privity with the Plan. Instead, all of First American Bank's rights are derived from the Collateral Assignment from SJP. (Def.'s SUMF ¶ 5; DOL's SUMF ¶¶ 7-8, ECF No. 29-10; Def.'s Moving Br. 22; Compl. ¶¶ 14, 31.)

On July 17, 2012, the DOL filed a claim against First Bankers and Vincent DiPano for violating provisions of the Employee Retirement Security Act of 1974 ("ERISA"). (DOL's SUMF ¶ 12; Pl.'s Resp. to DOL's SUMF ¶ 18; *see also* DOL Case, No. 12-4450, Compl., ECF No. 1.)

---

[4] Where a party only disputes a portion of a statement, the Court will cite to the undisputed portion as undisputed. In addition, if a party fails to adequately dispute a fact by citation to the record in accordance with Local Civil Rule 56.1, the Court may deem a fact undisputed.

[5] Where facts are undisputed, the Court omits duplicative citations to the responses.

[6] The transaction was a "leveraged ESOP" where the purchased stock was placed in a "suspense account." As the loan was paid, shares were released from the suspense account to participant accounts. (Def.'s Moving Br. 6 n.6; Pl.'s Opp'n Br. 2-3.)

The DOL alleged that FBT and DiPano breached their fiduciary duties with respect to the Plan by causing it to enter into a prohibited transaction by purchasing the shares of SJP at a price that exceeded its fair market value after an investigation that it determined was not prudent or in good faith. (DOL's SUMF ¶ 13; DOL Case Compl., No. 12-4450, ¶ 32.)

On April 20, 2016, the DOL settled with DiPano, whereby DiPano agreed to pay $2,045,454.54 to the ESOP. (DOL's SUMF ¶ 15.) On March 31, 2017, following a seventeen-day bench trial, the Undersigned issued a judgment against First Bankers in the amount of $9,485,000, plus interest, and subject to a reduction in the amount of Mr. DiPano's settlement. (DOL's SUMF ¶ 16; DOL Case Order, ECF No. 231.) First Bankers appealed and, while the appeal was pending, on September 21, 2017, First Bankers settled with the DOL for $8,000,000 (together with the DiPano Settlement, the "Recovery"). (DOL's SUMF ¶ 17.)

Prior to the settlements, but after the DOL case was underway, SJP defaulted on the loan. On April 28, 2015, First American Bank and SJP entered into a "Voluntary Collateral Surrender and Foreclosure Agreement." (Def.'s SUMF ¶ 6.) Pursuant to the terms of the Foreclosure Agreement, in exchange for SJP's assistance in connection with foreclosing on certain SJP equipment, First American Bank released its interest in SJP's contract rights, discharged any cause of action against SJP and its agents, officers, directors, and shareholders, and accepted certain collateral in full satisfaction of SJP's obligations. (LeVan Decl. Ex. F ("Voluntary Collateral Surrender and Foreclosure Agreement") ¶¶ 1(b), 1(g), 2(a), ECF No. 28-3.)

In this lawsuit, First American Bank contends that it is legally entitled to all or part of the DOL Recovery pursuant to the Collateral Assignment. Plaintiff alleges three counts against the Plan: (1) breach of contract; (2) breach of the covenant of good faith and fair dealing; and (3) unjust enrichment. (Compl.) On February 9, 2018, the Court granted DOL's Motion to Intervene in the

instant case. (Mot. to Intervene, ECF No. 23.) The DOL filed counterclaims seeking to dismiss the action and to enjoin First American Bank from violating ERISA by attempting to collect from the DOL Recovery. (ECF No. 24.) The DOL and the Plan each now move to dismiss or for summary judgment. (ECF Nos. 28, 29.) Plaintiff opposed and cross-moved to dismiss the DOL's counterclaim. (ECF No. 32.)

**II.     Motion for Summary Judgment**

Summary judgment[7] is appropriate if the record demonstrates "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). A material fact—a fact "that might affect the outcome of the suit under the governing law" *Anderson*, 477 U.S. at 248—raises a "genuine" dispute if "a reasonable jury could return a verdict for the nonmoving party." *Williams v. Borough of W. Chester*, 891 F.2d 458, 459 (3d Cir. 1989) (quoting *Anderson*, 477 U.S. at 250). "Disputes are 'genuine' if evidence exists from which a rational person could conclude that the position of the person with the burden of proof on the disputed issue is correct." *EBC, Inc. v. Clark Bldg. Sys., Inc.*, 618 F.3d 253, 262 (3d Cir. 2010) (quoting *Clark v. Modern Grp. Ltd.*, 9 F.3d 321, 326 (3d Cir. 1993)).

To determine whether a genuine dispute of material fact exists, the Court must consider all facts and reasonable inferences in the light most favorable to the non-movant. *Curley v. Klem*, 298 F.3d 271, 276-77 (3d Cir. 2002). The Court will not "weigh the evidence and determine the truth of the matter" but will determine whether a genuine dispute necessitates a trial. *Anderson*,

---

[7] Defendant and Intervenor moved to dismiss or, in the alternative, for summary judgment. Plaintiff argues that discovery is necessary and the Court should decline to "convert" the motion to one for summary judgment under Rule 12(d). Here, however, the parties moved for summary judgment as an alternative to the motion to dismiss. The Court, therefore, can treat the motion as one for summary judgment without "converting" the motion under Rule 12(d).

5

477 U.S. at 249. The party moving for summary judgment has the initial burden of proving an absence of a genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 330 (1986). Thereafter, the nonmoving party creates a "genuine [dispute] of material fact if . . . sufficient evidence [is provided] to allow a jury to find [for him] at trial." *Gleason v. Norwest Mortg., Inc.*, 243 F.3d 130, 138 (3d Cir. 2001).

"[T]he nonmoving party 'may not rest upon mere allegation or denials of his pleading.'" *Ciafrei v. Bentsen*, 877 F. Supp. 788, 792 (D.R.I. 1995) (citing *Anderson*, 477 U.S. at 256); *see also Olympic Junior, Inc. v. David Crystal, Inc.*, 463 F.2d 1141, 1146 (3d Cir. 1972). "Indeed, '[e]ven in cases where elusive concepts such as motive or intent are at issue, summary judgment may be appropriate if the nonmoving party rests merely upon conclusory allegations, improbable inferences, and unsupported speculation.'" *Ciafrei*, 877 F. Supp. at 792 (citing *Medina-Munoz v. R.J. Reynolds Tobacco Co.*, 896 F.2d 5, 8 (1st Cir. 1990)). To defeat summary judgment, therefore, "the nonmoving party must establish a trial-worthy issue by presenting 'enough competent evidence to enable a finding favorable to the nonmoving party.'" *Id.* (citing *Goldman v. First Nat'l Bank of Bos.*, 985 F.2d 1113, 1116 (1st Cir. 1993)).

### III. The Parties' Positions

#### A. The Plan

The Plan argues that Count One of the Complaint fails as a matter of law because Plaintiff can only recover against the "proceeds" of its secured collateral and the DOL Recovery is not "proceeds." (Def.'s Moving Br. 11-22, ECF No. 28-1.) Specifically, the Plan argues that because the Recovery was for an *overpayment*, not for a *diminution in value* of the collateral, the litigation proceeds are beyond the scope of FAB's reach. (*Id.* (emphasis added).) Further, the Plan argues that the Collateral Assignment, under which FAB asserts its rights here, is actually an

6

unenforceable prohibited transaction under ERISA because the parties used the Plan assets to secure the full $22,500,000 loan, which improperly included general employer business expenses instead of strictly the loan to purchase the employer securities. (*Id.* at 22.) The Plan argues, therefore, that "the Collateral Assignment—which is the only document that purports to give FAB standing to seek the relief it demands in the Complaint—is an unlawful and unenforceable agreement." (*Id.* at 24.)

In addition, the Plan argues that all claims arising from the loan, including the claims asserted against the Plan in this action, were released through the Voluntary Surrender and Foreclosure Agreement on April 28, 2015. (*Id.* at 24-27.) Finally, the Plan argues that the good faith and fair dealing claim fails because it is based on the same failure to pay as the breach of contract claim. (*Id.* at 27-29.) As to the unjust enrichment claim, the Plan argues that unjust enrichment is not available when a valid, un-rescinded contract governs the rights of the parties. (*Id.* at 29.) According to the Plan, unjust enrichment, like the implied covenant of good faith and fair dealing, is unavailable as a remedy because an express contract exists that defines the parties' respective rights. (*Id.*) Despite the Plan's claim that the Collateral Assignment is an unenforceable transaction, the Plan argues that it does not change the fact that Plaintiff's legal claims arise from express contracts that establish rights and obligations between the parties. (*Id.* at 27-31.)

**B. DOL**

The DOL argues that "[t]he ESOP Loan—made to the ESOP by SJP (a party in interest)—constitutes a prohibited transaction pursuant to ERISA" because ERISA prohibits lending money between a plan and a party in interest. (DOL's Moving Br. 10, ECF No. 29-1.) The DOL also makes the same arguments about the definition of "proceeds" and its application to the Recovery. Specifically, the DOL asserts that Plaintiff is barred from touching the Recovery in the DOL Case,

as the settlements do not fall under one of the three enumerated categories of permissible collateral nor does the Recovery constitute "proceeds" of the collateral, because it was a recovery for overpayment, not for a diminution in the value of the collateral. (*Id.* at 11 (citing *McDannold v. Star Bank, N.A.*, 261 F.3d 478 (6th Cir. 2001).) Further, Intervenor argues that, to the extent that state law would permit the security interest to attach to the Recovery, it is preempted by ERISA. (*Id.* at 12 n.7.)

On reply, Intervenor focuses heavily on the Voluntary Surrender and Foreclosure Agreement with SJP originally raised by the Plan in its moving papers. (DOL's Reply Br. 1, 4-5, ECF No. 34.) Intervenor argues that regardless of the definition of "proceeds," FAB's complaint fails in its entirety. (*Id.* at 4-5.) Intervenor also argues that the Complaint fails to plead that its assignor satisfied the condition precedent for the Plan's repayment obligations. (*Id.* at 8.) Specifically, Intervenor argues that "as a condition precedent for the Plan's ESOP Loan repayment obligations, SJP was first required to make a contribution in an amount that was at a minimum sufficient to allow the Plan to make the scheduled repayment on the Plan Loan." (*Id.*) As the pleadings do not indicate that this occurred, Intervenor asserts that FAB fails to plead that the Plan was under an obligation to repay.

C.  **First American Bank**

In opposition, Plaintiff argues that the Uniform Commercial Code ("UCC") defines the word "proceeds" broadly to protect secured creditors and that First American Bank's interest, as a result, extends to the Recovery. (Pl.'s Opp'n Br. 15-17, ECF No. 32-1.) FAB argues that because the Recovery amount was grounded in the stock price of SJP, it should be considered "proceeds" as defined by Delaware's applicable UCC statute. (*Id.* at 17-20.) Plaintiff disputes that ERISA preempts its claims, arguing that ERISA does not preempt the Delaware UCC, a statute of general

applicability. (*Id.*) FAB also disputes that the Collateral Assignment was a prohibited transaction or that the release extends to the claims against the Plan in this action because the Plan was not a party to the release. (*Id.* at 28-41.) Finally, First American Bank asserts that it has sufficiently pled its implied covenant claim and that its unjust enrichment claim, pled alternatively to the contract claim, is viable. (*Id.* at 41-47.)

### IV. Motions for Summary Judgment

The disputed issues before the Court require purely legal determinations. For the reasons set forth below, the DOL's and SJP's motions for summary judgment are granted.

#### A. First American Bank Released its Claims Against the Plan

The Court first considers the implications of the Voluntary Surrender and Foreclosure Agreement. Both the Plan and DOL argue that the Release resolves all issues in this action. (Def.'s Moving Br. 24-27; DOL's Reply Br. 1-5.) First American Bank responds that: (i) the Plan is not a party to the release and, therefore, does not benefit from the Release; and (ii) in any event, discovery is needed to determine the parties' intent on the scope of the release. (Pl.'s Opp'n Br. 39-41.) Intervenor, however, argues that because the contract is clear and unambiguous, there is no need—and in fact, no ability—to look to extrinsic evidence of the parties' intent. (DOL's Reply Br. 5.) The Court agrees with Intervenor. Here, the scope of the release is clear and, therefore, extrinsic evidence of the parties' intent is inadmissible—rendering discovery on this issue futile. *In re Diet Drugs Prod. Liab. Litig.*, 706 F.3d 217, 223 (3d Cir. 2013). Even if a party intended something contrary to the plain meaning of the agreement's terms, the use of clear and unambiguous terms renders the party's intent inapplicable. *Schor v. FMS Fin. Corp.*, 357 N.J. Super. 185, 191-92 (N.J. Super. Ct. App. Div. 2002). Further, as Intervenor points out, the

9

unambiguous contract terms were drafted by the party now claiming the ambiguity. (DOL's Moving Br. 6.) The Court finds the language of the release clear. FAB explicitly agreed:

> that the security interest granted to the Bank pursuant to the Loan Documents in Borrowers' office furniture, office equipment, computer equipment, accounts receivable and *contract rights*, and all proceeds thereof (collectively, the "Released Collateral") is hereby terminated and released, and the Bank retains no security interest in the Released Collateral.
>
> . . .
>
> Without limiting any of, and subject to, Bank's rights pursuant to Sections 2A and 9, Bank agrees that the proceeds received from all such Sales [of collateral] shall constitute *satisfaction in full of Borrowers' obligations* under the Loan Documents regardless of the amount of any such proceeds.
>
> . . .
>
> hereby unconditionally releases and forever discharges Borrowers and their respective agents, officers, directors, *shareholders*, employees, servants, attorneys, successors, heirs and assigns (collectively, "Borrower Releasees") from all damage, loss, claims, demands, liabilities, obligations, actions and causes of action whatsoever which Bank Releasors might now have or claim to have against any Borrower Releasees, whether presently known or unknown, and of every nature and extent whatsoever on account of or in any way concerning, arising out of or founded on the Loan Documents or the Loans, including, without limitation, *all such loss or damage of any kind heretofore sustained or that might arise as a consequence of the dealings between the parties*.

(LeVan Decl. Ex. F ¶¶ 1(b), 1(g), 2(a), ECF No. 28-3 (emphasis added).)

Each one of these paragraphs undermines the Bank's position that it has viable claims against the Plan. First, the Bank released its interest in any of SJP's contract rights. The only manner in which the Bank can proceed against the Plan is through the contracts between SJP and the Plan that SJP assigned to the Bank. Because the Bank, however, released its interest in all of SJP's contract rights, without limitation, the Bank cannot now bring this action.

Second, the collateral obtained pursuant to the Agreement constituted "satisfaction in full of Borrower's obligations under the Loan Documents," which specifically included the original

$22,500,000 loan. The collateral was simply incidental to the loan that was satisfied. As the DOL argued, "FAB cannot credibly argue that it could simultaneously terminate a security interest in collateral as to certain persons, but not others. Rather, the creation and termination of a security interest is attendant to the property itself, and thus operates as to the entire world." (DOL's Reply Br. 7 n.2.) The Court agrees. Once FAB released the underlying debt, the security interest in the collateral—which was incidental to the debt—was extinguished. *See Nordeen v. Taylor, Bean & Whitaker Mortg. Co. (In re Nordeen)*, 489 B.R. 203, 206 (D. Nev. 2013) ("[Lender] forgave the remaining principal balance . . . before the loan was purportedly transferred . . . which if true would have extinguished both the note and the security interest such that no party could ever again attempt to collect on the note."); *see also Island Pond Nat'l Bank v. Lacroix*, 158 A. 684 (Vt. 1932) (explaining that the security interest is incident to the principal debt); *Interbusiness Bank, N.A. v. First Nat'l Bank*, 318 F. Supp. 2d 230, 245 (3d Cir. 2004) ("Assignment or satisfaction of the underlying debt obligation extinguishes the party's security interest."); *Md. Nat'l Bank v. Porter-Way Harvester Mfg. Co.*, 300 A.2d 8, 11 (Del. 1972) ("We find unpersuasive the contention that an execution sale does not extinguish a previous security interest in collateral."). The issue, therefore, is not a question of whether the release extends to Plan as an entity, as Plaintiff attempts to argue (Pl.'s Opp'n Br. 37-38), but whether First American Bank can collect against the collateral securing a debt after the Bank entered into an agreement specifically agreeing that the debt was satisfied.

Finally, the Bank specifically released all claims against SJP's **shareholders** from any claim "of every nature" "in any way concerning, arising out of or founded on the Loan Documents or the Loans." (LeVan Decl. Ex. F ¶ 2(a) (emphasis added).) Although the Plan is not specifically referenced in the Agreement, at oral argument, Defendant pointed out that the Plan itself is a

11

shareholder. (Sept. 12, 2018 Tr. 30:18-21.) The Plan, and its participants, therefore, as shareholders of SJP, are released from all claims pursuant to the explicit terms of the agreements. As all potential claims, therefore, were released against Defendant, summary judgment is appropriate in favor of the Plan and the DOL.

**B.    The Recovery Does Not Constitute "Proceeds."**

Summary judgment is also appropriate on Count I for a second reason. Giving every possible inference to First American Bank—even if Plaintiff had not released its claims against the Plan, and assuming the Collateral Assignment is valid,[8] and if the Delaware state law allowing the Bank to take a security interest in the Recovery is not preempted by ERISA[9]—the Bank's security interest in the collateral would still not extend to the Recovery by the DOL.

It is undisputed that ERISA, the IRC, and the loan documents at issue limit First American Bank's recovery on the loans to: (1) unallocated SJP shares still held in the Plan's suspense account; (2) earnings, including dividends on and **proceeds** of, those unallocated Shares;

---

[8] The parties dispute whether this was a "prohibited transaction" under ERISA. There is further question as to what the implications would be if the assignment was improper. At oral argument, the DOL explained that it is not clear whether the remedy would be to rescind or reform the assignment if it was found invalid. (Sept. 12, 2018 Tr. 36:10-18.) The Court, however, need not reach this issue, as it finds that, even assuming the transaction is valid, the Recovery does not constitute "proceeds."

[9] The DOL argues that any contractual right of recovery First American has to the Recovery is preempted by ERISA. (DOL's Moving BR. 4, 10, 12 n.7.) Plaintiff responds that the UCC, a statute of general application, allows First American to recover the proceeds as collateral and that "ends the Court's inquiry." (Pl.'s Opp'n Br. 28-29.) Plaintiff argues that although ERISA preemption is broad, preemption does not occur where "the state law has only a 'tenuous, remote, or peripheral' connection with covered plans, as is the case with many laws of general applicability." (*Id.* at 29 (citing *D.C. v. Greater Wash. Bd. of Trade*, 506 U.S. 125, 130 n.1 (1992).) Plaintiff argues that ERISA, therefore, does not preempt the Delaware UCC, which provides that security interests will attach to the identifiable proceeds of collateral. (*Id.* at 30.) Here, the Court need not reach the issue because even if the state law is not preempted, the Recovery does not fall within the definition of "proceeds."

(3) contributions made by SJP to the ESOP for the ESOP to pay its loan obligations; and (4) earnings attributable to any investment of those contributions. (Def.'s Moving Br. 13 (citing ESOP Loan Agreement ¶ 8.3; ESOP Note at 2-3; ESOP Pledge Agreement ¶ 16) (emphasis added).) The parties recognize this limitation, but dispute whether the Recovery constitutes "proceeds."

The parties agree the contract is governed by Delaware law. Under Delaware law, the term "proceeds" is defined as:

> (A) whatever is acquired upon the sale, lease, license, exchange, or other disposition of collateral;
>
> (B) whatever is collected on, or distributed on account of, collateral;
>
> (C) rights arising out of collateral;
>
> (D) to the extent of the value of collateral, claims arising out of the loss, nonconformity, or interference with the use of, defects or infringement of rights in, or damage to, the collateral; or
>
> (E) to the extent of the value of collateral and to the extent payable to the debtor or the secured party, insurance payable by reason of the loss or nonconformity of, defects or infringement of rights in, or damage to, the collateral.

6 Del. C. § 9-102. Plaintiff argues that the Recovery falls within subsections (A), (C), and (D) and therefore, its security interest in the shares attaches to the Recovery. The Plan and DOL point the Court to the Sixth Circuit's decision in *McDannold v. Star Bank, N.A.*, 261 F.3d 478 (6th Cir. 2001). In *McDannold*, the Sixth Circuit considered a similar fact pattern and, in distinguishing litigation proceeds that compensate a debtor for *damage to collateral* from litigation proceeds that compensate a debtor for professional malpractice associated with *overvaluing the collateral*, found that only the first category is considered "proceeds." *Id.* at 483 ("Even if the settling defendants

negligently *inflated the price of the stock*, as plaintiffs allege, *they did not diminish its worth*, which was already imperiled due to business setbacks. Accordingly, the settlement fund compensates plaintiffs for unsound legal and financial advice, not for loss of collateral. . . . The bank does not address the essential distinction between an improper valuation of a stock price, as here, and the impairment of its actual market value.") (emphasis added).

Plaintiff argues that this case is inapposite because it was decided on a version of the UCC that did not include subsections (C) and (D) above. *Id.* at 482 n.2. Plaintiff also argues that, in addition, the *McDannold* court noted that "the revised Article 9 expands the concept of disposition to include property that originates from, but need not replace, the underlying collateral." *Id.* Plaintiff argues that the more applicable authority is the Ninth Circuit's decision in *McGonigle v. Combs*, 968 F.2d 810 (9th Cir. 1992).

The Sixth Circuit noted that a different analysis would be required under an expanded definition. *McDannold*, 261 F.3d at 482. After careful review of the *McDannold* and *McGonigle*[10] decisions, and the differences between the version of the UCC considered in *McDannold* and the UCC version applicable here, the Court reaches the same result as the Sixth Circuit.

The DOL Recovery does not fall into any of the applicable categories of "proceeds." As to subsection (A), the Recovery was not "acquired upon the sale, lease, license, exchange, or other disposition of collateral." The parties have not cited, and the Court is not aware of, any case where obtaining money back from an overpayment on collateral was found to be a "disposition" of the

---

[10] The Court finds *McGonigle* distinguishable. As the Sixth Circuit pointed out in rejecting the applicability of *McGonigle*, there is a difference between a stock drop case and a "malpractice case . . . bottomed on bad advice rather than a diminution of [] stock." *McDannold*, 261 F.3d at 484. Where the "'locus of the loss' was not damage to the collateral but rather common law malpractice; the plan was not injured as a purchaser of stock but as a purchaser of professional services." *Id.*

collateral. Even under the expanded concept of "disposition," therefore, the DOL's Recovery does not constitute "proceeds" under subsection (A).

Similarly, as to subsection (C), the Recovery does not constitute "proceeds" because the Recovery is not "rights that arise out of the collateral." As the Plan argued,

> even if there had been no collateral at all securing FAB's loan—the DOL could have asserted the same legal claims against FBT and DiPano, based on the same factual allegations, and achieved the same Recovery. The collateral is entirely inconsequential to the claims of the DOL Case and to the Recovery at issue in this case.

(Def.'s Moving Br. 16.) The Court agrees. The breach of fiduciary duty owed to the Plan participants is separate and apart from the Bank's rights with respect to the collateral. The Recovery, therefore, cannot be legitimately characterized as "rights arising out of the collateral" so that FAB's security interest would attach.

Finally, as to subsection (D), the Recovery did not involve claims arising out of the "loss, nonconformity, or interference with the use of, defects, infringement of rights in, or damage to, the collateral." Although Plaintiff argues that the difference is a "distinction without a difference" (Pl.'s Opp'n Br. 19), the Court disagrees. Overpaying for the collateral did not change in any way the actual value of the collateral. In other words, if someone acts in a way that diminishes or interferes with the value of secured collateral, the lender's security interest automatically attaches to amounts meant to compensate for that interference. On the other hand, however, where a lender enters into a transaction secured by collateral that it *believes* is worth more than it is worth, the lender is not entitled to security in the amount of its belief—it is only secured in the amount that the collateral is worth. The overpayment, therefore, did not affect the actual value of the collateral.

The Court, therefore, finds that the Recovery does not constitute "proceeds" and First American Bank's security interest does not attach to the Recovery. As such, summary judgment in favor of the Plan and the DOL on this issue is appropriate.

V. **Motion to Dismiss DOL's Counterclaims**

The DOL also filed counterclaims against First American Bank seeking the following relief: (1) dismissing FAB's Complaint, which "knowingly seeks to divert plan assets to pay a debt that has been discharged or is otherwise unenforceable pursuant to the plain language of the Loan Documents"; (2) enjoining FAB from asserting any claim against the DiPano proceeds or the FBT recovery; (3) enjoining FAB from requesting the fiduciary to tender the proceeds to FAB; and (4) an injunction requiring FAB to restore Plan Assets expended in responding to FAB's claims. (DOL's Countercl. 9-11.)

Plaintiff moves to dismiss the counterclaims, arguing that neither "dismissal" nor "injunctive relief" are causes of action. (Pl.'s Opp'n Br. 47-50.) Plaintiff also argues that ERISA provides limited causes of action against non-fiduciaries and allowing FAB to foreclose on its collateral would not violate ERISA. (*Id.* at 50-54.) In opposition, the DOL argues that the issue of whether "dismissal" is a cause of action is mooted by the DOL's motion to dismiss. (DOL's Opp'n Br. 3, ECF No. 35.) As to the claims for injunctive relief, ERISA expressly authorizes the causes of action and the Secretary can enjoin non-fiduciaries such as FAB. (*Id.*)

When analyzing a Rule 12(b)(6) motion, district courts conduct a three-part analysis. First, the court must "tak[e] note of the elements a plaintiff must plead to state a claim." *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009). Second, the court must accept as true all well-pleaded factual allegations and construe the complaint in the light most favorable to the plaintiff. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). A court, however, must disregard any conclusory

allegations proffered in the complaint. *Id.* at 210-11. Finally, a court must determine whether the "facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" *Id.* at 211 (quoting *Iqbal*, 556 U.S. at 679).

Here, it appears that Counts I, II, and III are mooted by the Court's grant of summary judgment.[11] Count IV seeks reimbursement for depleting plan assets. At this time, however, the Court finds that the fourth counterclaim does not meet the pleading requirements of Rule 8(a) to adequately put the opposing party on notice of the claims against it. The Court, therefore, will dismiss this counterclaim, but will allow the DOL to file an Amended Complaint if it deems appropriate.

## VI. <u>Conclusion</u>

For the reasons set forth above, Defendant's motion for summary judgment is granted; the DOL's motion for summary judgment is granted; and First American Bank's cross-motion to dismiss is granted. An order consistent with this Memorandum Opinion will be entered.

s/ Michael A. Shipp<br>
**Michael A. Shipp**<br>
**United States District Judge**

**Dated:** October 31, 2018

---

[11] To the extent the DOL disagrees with the Court's assessment, it may amend the counterclaims.